Argued and submitted November 6, 2006, reversed and remanded January 3, 2007

## Nicole A. TRUCKE,
*Appellant,*

*v.*

## Russell A. BAUGHMAN, Jr.,
*Respondent.*

## CV05-0830; A131855

150 P3d 1080

George W. Kelly argued the cause and filed the brief for appellant.

No appearance for respondent.

Before Edmonds, Presiding Judge, and Wollheim, Judge, and Linder, Judge pro tempore.

LINDER, J. pro tempore.

## LINDER, J. pro tempore

Mother appeals a default judgment that, among other things, awarded father full custody of their child and required mother to pay father monthly child support. The trial court reinstated the default judgment after it had exercised its discretion under ORCP 71 B[1] to set it aside on grounds of excusable neglect. In reinstating the judgment, the trial court determined that it committed legal error in initially setting aside the judgment and that it had no discretion to do so. On appeal, we agree with mother that the trial court properly exercised its discretion to set aside the default judgment in the first instance and that it erred in concluding that it was obligated to reinstate that judgment. We therefore reverse and remand for further proceedings.

The pertinent facts are largely procedural in nature. This case began in February 2005, when mother filed a petition for custody and parenting time in the Marion County Circuit Court seeking sole custody of the parties' child. In response, father filed an answer and counterclaim requesting that he, rather than mother, be given sole custody of their child. In addition to filing his answer, father filed a motion to change venue to the Umatilla County Circuit Court. The Marion County Circuit Court granted the venue change on May 25 and mailed the case file to the Umatilla County Circuit Court on June 7. Included in the file was a printout of all register entries made in the Marion County case up to and including the date on which the file was placed in the mail (*i.e.*, entries through June 7). The Umatilla County Circuit Court received the file three days later, on June 10. On that same date, the Umatilla County Circuit Court entered the case in the register under the new Umatilla County Circuit Court case number and made register entries for all papers previously filed in the Marion County Circuit Court that were transmitted as part of the file.

---

[1] ORCP 71 B(1) provides, in part:

"On motion and upon such terms as are just, the court may relieve a party or such party's legal representative from a judgment for the following reasons: (a) mistake, inadvertence, surprise, or excusable neglect[.]"

The next procedural event is of particular significance. On June 8, after the Marion County Circuit Court granted the venue change, mother's attorney, Swanson, moved to withdraw as her attorney. He filed that motion with the Marion County Circuit Court and served it on father's attorney. By then, the case file had been mailed to—but not yet received by—the Umatilla County Circuit Court. On that same date, the Marion County Circuit Court granted the motion. Also on that date, the order granting the withdrawal was placed in the file in the Marion County Circuit Court and entered in the register under the Marion County case number. Because that order was granted after the case file had been mailed to Umatilla County, it was not in the file when the Umatilla County Circuit Court received it. Nor was a copy later forwarded to that court. As a result, the Umatilla County Circuit Court never received the order.[2] Nor was the order reflected on the printout of register entries that the Marion County Circuit Court included in the transferred file, because that printout showed only entries made on or before June 7.

After the Umatilla County Circuit Court received and processed the transferred file, that court immediately notified the parties, in writing, that they were required to attend a parenting education class and to contact a mediation coordinator. They had until July 8 to comply. Because the Umatilla County Circuit Court had not received the order allowing Swanson's withdrawal as mother's attorney, it continued to consider Swanson to be mother's attorney of record. The court therefore sent the mediation notice to Swanson, rather than to mother. Mother, who resides in Salem, remained unaware of her obligation to attend parenting classes and to contact the mediation coordinator, and she therefore did neither. Father, however, completed those requirements.

Because mother failed to participate in the mediation process, father moved to strike mother's pleadings.

---

[2] The order granting mother's counsel to withdraw remains on file in the Marion County Circuit Court.

Father's attorney, who had been served with the order allowing mother's attorney to withdraw, served his motion to strike directly on mother, not on Swanson.

The Umatilla County Circuit Court scheduled a hearing on father's motion to strike for October 12. Again, the court sent notice of the hearing to Swanson, as mother's attorney, not to mother directly. Swanson did not contact mother about the hearing, so mother was not aware of it and failed to appear. Because mother did not appear, the court granted father's motion to strike. On October 25, father's attorney sent the court a proposed order to strike and for entry of default, a proposed general judgment granting father sole custody of the parties' child, and a statement of requested attorney fees. Father's attorney served mother directly with those documents. She received them in Salem on October 28. By then, the order of default and general judgment had already been signed and entered by the Umatilla County Circuit Court.

On November 18, shortly after mother received a copy of the default judgment in the mail, mother filed a motion to set aside the judgment. In support of the motion, she represented that she was unaware of the hearing because the notice of it was sent to her former attorney and he did not inform her about it. The court, without holding a hearing, granted mother's motion and ordered that the default judgment be set aside. In response, father objected to that order and asked the circuit court to hold a hearing on the matter. In support of his objection, father asserted that "professional mistakes or negligence of [mother's] trial counsel does not constitute 'mistake, inadvertence, surprise, or excusable neglect' necessary to set aside a judgment" under ORCP 71 B. Father's position, in essence, was that the factual circumstances surrounding mother's failure to appear did not amount to excusable neglect as a matter of law and, therefore, that the circuit court had no discretion to set aside the judgment.

After a hearing on father's objection, the court agreed with father's position. The court determined that Swanson remained mother's attorney of record because the Umatilla County Circuit Court never received notice of the

attorney's withdrawal. Thus, mother, through her attorney, was sent notice of the hearing on father's motion to strike mother's pleadings. The court agreed with father that the "[m]istakes, negligence or inadvertence of Mother's attorney do not constitute grounds to set aside a judgment." The court therefore concluded that, under the circumstances, the court could not allow mother's motion to set aside the default judgment, and it ordered that the judgment be reinstated. On appeal, the gist of mother's argument is that, contrary to the circuit court's understanding, there are times when an attorney's mistake, inadvertence, or negligence can constitute "excusable neglect" within both the terms and spirit of ORCP 71 B, and this is one of those times.[3]

Whether mother is right in that regard, given the particular facts presented, potentially presents an interesting question. On the one hand, as we have observed, "[f]or at least a century, the general rule has been that the professional mistakes, negligence, or inadvertence of an attorney do not constitute the 'mistakes, inadvertence, surprise, or inexcusable neglect' necessary to set aside a judgment." *McCarthy v. Oregon Freeze Dry, Inc.*, 158 Or App 654, 658, 976 P2d 566 (1999), *rev'd on other grounds*, 334 Or 77, 46 P3d 721 (2002) (citing cases involving attorney failures such as the failure to file an answer or an appearance and the failure to make a particular legal argument).[4] On the other hand, over the years, some mistakes or negligence on a party's attorney's part have been deemed excusable neglect and, thus, grounds for relief from a judgment of default. *See, e.g., Hamel-Bishop and Bishop*, 179 Or App 473, 40 P3d 561 (2002) (excusable neglect for mother not to appear when her out-of-state attorney attempted to do so but did not follow the appropriate procedures for appearing); *May and May*, 55 Or App 396, 637 P2d 1373 (1981) (party's reasonable belief that attorney had filed an appearance for her, when he had not done so due to negligence, was grounds for setting aside default judgment). Here, there is more than just a potential

---

[3] Father declined to appear on appeal.

[4] The trial court did not cite *McCarthy* in its order, but father cited and relied on it in his motion for reinstatement of the default judgment. It appears, therefore, that our decision in *McCarthy* may have led the trial court to conclude that it had no discretion to give mother relief from the default judgment.

attorney error involved. This case also involves an unusual circumstance in which the Marion County Circuit Court order allowing mother's attorney to withdraw was, through no fault of mother or her attorney, never received by the Umatilla County Circuit Court. Had it been, mother would have been served directly with all notices and motions in the case.

But we need not decide whether the facts in this case distinguish it from more ordinary cases of attorney neglect. We conclude, more fundamentally, that this is not a case of attorney neglect at all, because Swanson effectively had withdrawn from representation by the time the case was filed in the Umatilla County Circuit Court.

ORS 14.160 controls when jurisdiction transfers from one court to another after a change of venue order. It provides:

> "Upon the *filing* of the transcript and papers with the clerk of the court to which the cause is transferred, the change of venue shall be deemed complete, and thereafter the action shall proceed as though it had been commenced in that court."

(Emphasis added.) Thus, by statute, a transferring court retains jurisdiction to enter orders in a case until the case file is received and filed by the court to which the case is being transferred.[5]

Here, the Umatilla County Circuit Court did not receive and process the case file until June 10. As a result, the Marion County Circuit Court retained jurisdiction until that date. When Swanson filed his motion to withdraw on June 8, he filed it with the only court that could rule on it—the

---

[5] The statute has been a part of Oregon's code since 1862. General Laws of Oregon, Civ Code, ch I, title V, § 50, p 150 (Deady 1845-1864). The only reported case involving the statute concerned whether a notice of appeal must be filed with the clerk of the court in which the case originated or to which it was transferred. *State Bank v. West Coast Spruce Co.*, 128 Or 405, 272 P 171 (1929). The court observed that the "universal rule" seems to be that "the change of venue deprives the court in which the cause was originally begun of all further jurisdiction." *Id.* at 408. But it did not decide, nor did it need to decide, when a change of venue is first accomplished. ORS 14.160 answers that question unambiguously, at least for our purposes in this case—jurisdiction transfers from the originating court when the case is received and filed by the court to which the cause is transferred.

Marion County Circuit Court. When that court allowed the motion, Swanson ceased to be mother's attorney of record. To be sure, the Umatilla County Circuit Court did not know of Swanson's withdrawal as mother's counsel. But that problem stems from the administrative procedures within the court system for transferring files between counties, which are imperfect. This is simply a case in which the paperwork never caught up with the file, through no obvious fault of anyone involved and certainly not through any fault attributable to mother.

The trial court was correct when it determined that the circumstances of mother's nonappearance constituted "mistake, inadvertence, surprise, or excusable neglect" under ORCP 71 B. As a result, the trial court had discretion to grant the motion to set aside the judgment, as it originally chose to do. The trial court's subsequent conclusion that it lacked that discretion and that it was legally obligated to reinstate the default judgment was in error.

Reversed and remanded.